# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| AQUANUS THOMPSON, | : |
| Plaintiff, | : |
| VS. | : |
| | : CIVIL No: 5:17-CV-230-MTT-TQL |
| Warden GREGORY MCLAUGHLIN, *et al.*, | : |
| Defendants. | : |

## ORDER AND RECOMMENDATION

Plaintiff Aquanus Thompson, a prisoner at Valdosta State Prison in Valdosta, Georgia, has filed a *pro se* civil rights action in this Court seeking relief under 42 U.S.C. § 1983. ECF No. 1. Plaintiff also seeks leave to proceed in this case without prepayment of the required filing fee. ECF No. 2. Plaintiff's motion for leave to proceed *in forma pauperis* is **GRANTED**.[1]

For reasons stated herein, it is **RECOMMENDED** that Plaintiff's Fourteenth Amendment due process claim be **DISMISSED WITHOUT PREJUDICE**. Plaintiff's Eighth Amendment failure to protect claim should proceed for further factual development.

**I.      Motion to Proceed *in forma pauperis***

Although Plaintiff's motion to proceed *in forma pauperis* is granted, Plaintiff

---
[1] A review of court records on the PACER Case Locator reveals that Plaintiff has accrued no strikes for the purposes of 28 U.S.C. § 1915(g).

remains responsible for payment of the full $350.00 filing fee. The **CLERK** shall thus forward a copy of this Order to the warden and/or business manager of the facility in which Plaintiff is incarcerated so that withdrawals from his account may commence as payment towards the filing fee.

In accordance with the provisions of the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(b), Plaintiff's custodian (and any successor custodians) shall ensure that twenty percent (20%) of the income credited to Plaintiff's account (at the institution or facility in which he is confined) be remitted to the Clerk of this Court until the $350.00 filing fee has been paid in full. It is **ORDERED** that Plaintiff's custodian forward payments from the prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00. Collection of monthly payments from Plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

In the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay any balance due on the filing fee in this proceeding until said amount has been paid in full. Collection from Plaintiff of any balance due on the filing fee by any means permitted by law is authorized in the event Plaintiff is released from custody and fails to remit payments.

## II. Preliminary Screening of Plaintiff's Complaint

### A. Standard of Review

In accordance with the PLRA, the district courts are obligated to conduct a

preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. See 28 U.S.C. § 1915A(a). Screening is also required under 28 U.S.C. § 1915(e) when the plaintiff is proceeding IFP. Both statutes apply in this case, and the standard of review is the same. When conducting a preliminary screening, the Court must accept all factual allegations in the complaint as true. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003). *Pro se* pleadings, like the one in this case, are "'held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.'" *Boxer X,* 437 F.3d at 1110 (quoting *Hughes*, 350 F.3d at 1160). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).

"A claim is frivolous only if it 'lacks an arguable basis either in law or in fact.'" *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The Court may dismiss claims that are based on "'indisputably meritless legal'" theories and "'claims whose factual contentions are clearly baseless.'" *Id*. (quoting *Neitzke*, 490 U.S. at 327). A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555

(first alteration in original). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id*. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under §1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

### B. Plaintiff's Claims

Plaintiff complains that when he was incarcerated at Macon State Prison on February 28, 2017, two Blood Gang members "entered [his] cell with shanks and threatened to 'wet [him] up' if [he] didn't leave the dorm." ECF No. 1 at 6. One of the gang members told Plaintiff that he would be "wet up" if he ever came out of "the hole." *Id*. Fearing for his safety, Plaintiff gathered his belongings, left his cell, and reported the incident to dorm officer Debbie Nguyen. *Id*.

Nguyen escorted Plaintiff to the hole ("H-1") and apparently wrote a disciplinary report charging Plaintiff with "failure to follow instructions." ECF No. 1 at 7. Upon arrival in H-1, Plaintiff told Officer Steven Harris that he needed to be placed in protective custody due to the threats made by the Blood Gang members. ECF No. 1 at 6-7. Officer

4

Harris instructed Plaintiff to submit a sworn statement regarding the incident to Sergeant Childs. ECF No. 1 at 7. Plaintiff states he obtained a statement form "days later" and provided the names of the inmates who threatened him, detailed information about threats, and a request for protective custody. *Id.* Further, Plaintiff alleges that he wrote Warden McLaughlin regarding his need for protective custody and also spoke with him regarding the issue during inspection. ECF No. 1 at 4-5

Following Plaintiff's report of the threats, unnamed jail officials found a shank in the possession of one of the inmates who threatened Plaintiff. ECF No. 1 at 7. They placed this inmate in the hole, in a cell directly across from Plaintiff. *Id.* Upon learning that Plaintiff occupied the cell across from him, the inmate began to "yell out even more threats of violence towards [Plaintiff]." *Id.* Plaintiff states that "a known Blood Gang member (inmate King) was placed in [Plaintiff's] cell." *Id.* Plaintiff submitted a dorm change request, which included a request for protective custody, to Counselor Miller. *Id.* He states that he completed a second "statement form," but never received a response regarding his request for protective custody. *Id.* Plaintiff claims he lost sleep, constantly feared for his life because Blood Gang members were in and around his cell, and was in a state of constant emotional distress. *Id.*

On March 20, 2017 Plaintiff filed a grievance addressing his need for protective custody. ECF No. 1 at 7-8. On April 14, 2017, Unit Manager Clarence Kegler conducted an investigation into Plaintiff's request and refused to place Plaintiff into protective custody. ECF No. 1 at 8. Plaintiff states that Sergeant C. Hudson was present or participated in the protective custody investigation. ECF No. 1 at 11. According to

5

Plaintiff, officials told him that his request for protective custody was denied because his "housing assignment didn't warrant protective custody" and because Plaintiff violated "facility rules" when he left his dorm after being threatened by the Bloods Gang members. ECF No. 1 at 8. Plaintiff states he "continued to be in constant fear for [his] safety since any inmate at any time could be placed in [his] . . . cell . . . ." *Id.*

On June 5, 2017, Lieutenant Jackson told Plaintiff he needed to return to the general population. *Id.* Plaintiff refused, telling Jackson that he feared for his safety. Jackson apparently did not assist Plaintiff in obtaining protective custody, but filed another disciplinary report charging Plaintiff with "failure to follow instructions." *Id.*

Plaintiff complains that during these months, he feared for his safety, and "[n]o attempt [was] made by any staff member or the Warden to resolve [the] situation." *Id.* Instead, Plaintiff states he was "ignored in segregation." *Id.* As a result, he suffered "emotional distress . . . because of [the Defendants'] refusal to insure [his] safety." *Id.*

Plaintiff disagrees with the disciplinary reports. He states that although he broke no rules, he was placed in segregation for approximately one-hundred days. ECF No. 1 at 8-9. While in segregation, he was once denied telephone privileges and "often" denied recreation, rehabilitation classes, and religious services. ECF No. 1 at 9.

Since filing his complaint, Plaintiff has been transferred from Macon State Prison and is currently incarcerated in Valdosta State Prison. ECF Nos. 5, 6.

Plaintiff names four Defendants: Warden Gregory McLaughlin, Unit Manager Clarence Kegler, Sergeant Hudson, and Lieutenant Richard Jackson. ECF No. 1 at 4.

Plaintiff seeks damages in the amount of "$20,000 ($5,000 per [D]efendant) for the.

6

emotional distress [he has] endured as a result of the deliberate, reckless, and callous indifference towards insuring [his] safety." ECF No. 1 at 10.

**C. Analysis**

1. Fourteenth Amendment Due Process Clause

It is not clear if Plaintiff is attempting to raise a due process claim. To the extent he is, his claim fails.

A prisoner states a cognizable claim for the deprivation of his Fourteenth Amendment due process rights when he alleges the deprivation of a constitutionally protected liberty or property interest, state action, and a constitutionally inadequate process. See *Jamerson v. Sec'y, Dep't of Corr.*, 698 F. App'x 581, 582 (11th Cir. 2017) (per curiam) (citing *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994)). In this case, Plaintiff merely alleges that he disagrees with the disciplinary reports, and maintains he did not break any rules. Plaintiff has not alleged that he was denied a disciplinary hearing regarding his punitive segregation. Plaintiff has failed to allege the third element necessary for a viable deprivation of due process claim—a constitutionally inadequate process. Thus, his claim, to the extent he is making one, fails.

Furthermore, even if Plaintiff alleged he did not receive a disciplinary hearing or the hearing was inadequate, his claim would still fail. A prisoner can claim a due process violation only if he can show deprivation of a protected liberty interest.

> The Supreme Court has identified two situations in which a prisoner can be further deprived of his liberty such that due process is required. The first is when a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. The second situation is when the state has consistently bestowed a certain benefit to prisoners,

usually through statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

*Kirby v. Siegelman*, 195 F.3d 1285, 1290-91 (11th Cir. 1999) (citations omitted).

These situations are not present here. Confinement in segregation neither exceeds the sentence imposed on Plaintiff by the court nor does "segregated confinement . . . present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Sandin v.Conner*, 515 U.S. 472, 486 (1995). The temporary placement in administrative segregation and the occasional denial of some privileges does not involve the loss of a liberty interest such that due process is required. *See Upshaw v. McLaughlin*, 5:15-CV-395 (MTT), 2017 WL 726667, at *7 (M.D. Ga. Jan. 31, 2017) (citations omitted) (noting that courts within the Eleventh Circuit have consistently found that temporary loss of certain privileges does not amount to atypical and significant losses that invoke the protection of the Fourteenth Amendment).

It is, therefore, **RECOMMENDED** that Plaintiff's Fourteenth Amendment due process claim be **DISMISSED WITHOUT PREJUDICE**.

2. Eighth Amendment Failure to Protect

Prison officials have a duty to protect inmates from violence at the hands of other inmates. *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). To prevail on an Eighth Amendment failure to protect claim, "the plaintiff must show: (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) a causal connection between the defendants' conduct and the Eighth Amendment violation." *Id*. (citation omitted).

Regarding the first element, Plaintiff alleges there was substantial risk that he would be seriously injured by the Bloods Gang members. *Id*. He states that two gang members, armed with shanks, threatened to harm him if he did not leave the general population. *See Rodriguez v. Sec'y for the Dep't of Corr*., 508 F.3d 611, 617 n.12 (11th Cir. 2007) (finding that "the gang related threats made on Rodriguez's life, which were explicitly reported to prison officials, present[ed] a substantial enough risk of harm to trigger a prison official's Eighth Amendment duty to act"). Plaintiff does not, however, allege he was physically injured. Instead, he alleges that he suffered severe emotional distress. 28 U.S.C. 1997e(e) prevents Plaintiff from recovering the $20,0000 of damages he seeks because he has not suffered a physical injury. But, it does not appear that the lack of physical injury prevents him from showing a substantial risk of serious harm. *See Farmer*, 511 U.S. at 845 (finding that "'a subjective approach to deliberate indifference does not require a prisoner seeking "a remedy for unsafe conditions [to] await a tragic event [such as an] actua[l] assaul[t] before obtaining relief.'") (citation omitted). Should Plaintiff ultimately prove a constitutional violation, he could recover nominal damages without showing a physical injury. *Brooks*, 800 F.3d at 1308.

As for the second and third elements, Plaintiff alleges the Defendants were deliberately indifferent to the substantial risk he faced and their indifference caused his severe emotional distress. ECF No. 1 at 7-9. It could be that the Defendants actually responded reasonably upon hearing that Plaintiff had been threatened. This, perhaps, is why Plaintiff was not physically injured by the inmates who threatened him, or any other inmate for that matter. But, at this stage in the litigation, Plaintiff's complaint is to be

construed liberally and his allegations must be taken as true. He alleges that following the initial threat, which he reported to Defendants, he was moved to the H-1, and that Blood Gang members were placed either in his cell or in close proximity to his cell. ECF No. 1 at 7-8. Plaintiff alleges the Defendants' action of placing him in close proximity to the gang members caused his severe emotional distress. ECF No. 1 at 7-9

Construing Plaintiff's complaint liberally, Plaintiff's Eighth Amendment failure to protect claim against the named Defendants cannot be dismissed as frivolous or failing to state a claim at this time.

### III. Conclusion

It is **RECOMMENDED** that Plaintiff's Fourteenth Amendment due process claim be **DISMISSED WITHOUT PREJUDICE**. Plaintiff's Eighth Amendment failure to protect claim should proceed for further factual development.

### OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Marc T. Treadwell, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

### ORDER FOR SERVICE

Having found that Plaintiff has made colorable constitutional violation claims against Defendants, it is accordingly **ORDERED** that service be made on Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act. Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

### DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

### DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

### FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and

correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendants from whom discovery is sought by the Plaintiff. The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian. **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall take place within 90 days of the date of filing of an answer or dispositive motion by the Defendant (whichever comes first) unless an extension is

otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court. This 90-day period shall run separately as to Plaintiff and Defendant beginning on the date of filing of Defendant's answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party. The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery: except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party. No party shall be required to respond to any such requests which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED AND RECOMMENDED,** this 16th day of November, 2017.

                    s/***THOMAS Q. LANGSTAFF***
                    UNITED STATES MAGISTRATE JUDGE